**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF**<br>**STEPHANIE A. GALLAGHER**<br>**UNITED STATES DISTRICT JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>(410) 962-7780<br>Fax (410) 962-1812<br>MDD_SAGchambers@mdd.uscourts.gov |

March 18, 2024

**LETTER TO PARTIES**

Re:  <u>Tanya E. v. Commissioner, Social Security Administration</u>
     Civil Case No. SAG-22-2084

Dear Plaintiff and Counsel:

On August 18, 2022, Plaintiff Tanya E., proceeding *pro se*, petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for benefits. ECF No. 1.  After considering the record in this case, ECF No. 12, Plaintiff's correspondence and Defendant's brief (ECF Nos. 15, 20) I have determined that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will REVERSE the SSA's decision and REMAND the case to the SSA for further consideration. This letter explains my rationale.

## I.     PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on May 30, 2017, and a Title XVI application for Supplemental Security Income ("SSI") on June 19, 2018, alleging a disability onset of January 31, 2017. Tr. 92, 128.  Plaintiff's claims were denied initially and on reconsideration.  Tr. 143-149.  On November 20, 2019, an Administrative Law Judge ("ALJ") held a hearing, which was postponed due to Plaintiff's request for counsel to be present.  Tr. 76.  The postponed hearing subsequently occurred on January 7, 2021.  Tr. 53-73.  Following the hearing, on May 19, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame.  Tr. 19-46.  The Appeals Council denied Plaintiff's request for review, Tr. 12-16, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] 42 U.S.C. §§ 301 et seq.

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since January 31, 2017, the alleged onset date[.]" Tr. 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "substance abuse disorder (alcohol), posttraumatic stress disorder (PTSD), major depressive disorder, anxiety disorder, femur fracture, and anemia[.]" *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairment of a right knee replacement. *Id.* at 28. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 27. Despite these impairments, the ALJ determined that if Plaintiff stopped the substance abuse, she retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: no climbing stairs or ladders; needs to avoid unprotected heights and hazardous machinery; no working with the public; in a low stress work environment with occasional decision-making and occasional changes in work setting; due to issues with pain, would be off-task 5% of the workday.

*Id.* at 31. The ALJ determined that Plaintiff was unable to perform past relevant work as a Dental Assistant (DOT[2] #079.361-018) but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 37-38. The ALJ noted that Plaintiff's substance use disorder was "material to the determination of disability because [Plaintiff] would not be disabled if [s]he stopped the substance use." *Id.* at 38. Ultimately, the ALJ concluded that "[b]ecause the substance use disorder [was] a contributing factor material to the determination of disability, [Plaintiff] was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of [the ALJ's] decision." *Id.*

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

Because Plaintiff proceeds *pro se*, the Court must "liberally construe" her briefs to "confirm [that] the [SSA] fulfilled [its] obligation to 'scrupulously and conscientiously probe into, inquire of, and explore . . . all the relevant facts' in the record of the unrepresented party." *Dawson v. Astrue*, No. RMG-11-1759, 2013 WL 239130, at *1 (D.S.C. Jan. 22, 2013) (quoting *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980)).

### IV. ANALYSIS

Plaintiff, in her correspondence to the Court, contends that due to her multiple physical and mental impairments preventing her from working, the ALJ should have found her disabled.[3] ECF No. 12, at 1. Specifically, Plaintiff refers to her inability to write; her head injury that occurred in 2021 when she fell down a set of stairs; her poor thinking, remembering, and concentrating; constant pain in her left leg due to a rod placement subsequent to a car accident; her inability to walk sufficiently; and that she is unable to "do normal things" as she once was able to, such as the ability to work. Defendant counters that substantial evidence supports the ALJ's decision and the deferential standard applicable to this case, thus this Court should affirm the ALJ's decision. ECF No. 20, at 1-2.

An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental

---

[3] On May 11, 2023, the Court directed Plaintiff to file a written response that "explain[ed] how the [SSA] erred in adjudicating their claim. At a minimum, plaintiff must indicate that they intend to proceed with their complaint." ECF No. 14, at 1. The Court directed Plaintiff to file by July 5, 2023. *Id.* Plaintiff subsequently filed her letter correspondence on June 29, 2023, indicating her intent to proceed, but the correspondence did not contain Plaintiff's arguments as to why she thought the SSA erred. ECF No. 15. The Court will liberally construe Plaintiff's correspondence to consider, among others, whether the SSA fulfilled its obligation and substantial evidence supports the ALJ's decision. *See Dawson*, 2013 WL 239130, at *1.

impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).

When performing the RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.); *see White v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (internal citation omitted) (stating that to satisfy the function-by-function analysis requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), as amended (Dec. 13, 2000); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original and internal quotation marks omitted) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate logical bridge from [that] evidence to his conclusion.").

If an ALJ chooses to include a specific off-task time limitation in the RFC, a narrative explanation must be included. "[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018). However, if an ALJ specifies an off-task time that a claimant will be able to perform work-related tasks, the ALJ must adequately explain that determination with reference to the record. *Abdul K. v. Kijakazi*, No. BAH-21-2434, 2022 WL 2789363, at *2-3 (D. Md. July 15, 2022); *see, e.g.*, *Fisher v. Comm'r, Soc. Sec.*, No. RDB-17-3165, 2018 WL 3348858, at *3 (D. Md. July 9, 2018) ("The ALJ, however, provided no support or explanation for this extremely specific [off-task time] conclusion."); *Carter v. Berryhill*, No. 17-4399, 2018 WL 4381275, at *12 (S.D.W. Va. Apr. 11, 2018), *report and recommendation adopted*, 2018 WL 4169108 (S.D.W. Va. Aug. 30, 2018) (remanding where the ALJ "left the court to guess" how the ALJ arrived at the conclusion that the claimant would be off task for 15 percent of the workday).

This Court has, on several occasions, addressed an ALJ's obligations when specifying an off-task time limitation. *See Abdul K.*, 2022 WL 2789363, at *2-3 (remanding when the ALJ failed to explain how the evidence cited translated into a determination that Plaintiff would be off task 10% of the time); *Jennifer M. v. Kijakazi*, No. ADC-21-1491, 2022 WL 2668423 (D. Md. July 11, 2022) (same); *Brian L. v. Comm'r, Soc. Sec. Admin.*, No. DLB-19-197, 2020 WL 1814205, at *3 (D. Md. Apr. 9, 2020) (addressing 5% off-task time limitation); *Williams v. Berryhill*, No. TMD-17-1083, 2018 WL 3092273, at *6 (D. Md. June 22, 2018) (addressing 10% off-task limitation); *Kane*, 2018 WL 2739961, at *1 (same). In each case, the Court required the ALJ to provide an explanation for their limitation findings, specifically that plaintiffs would be off task for a percentage of the workday. In *Kane*, the Court explained that "the assignment of a precise

percentage of time off-task constituted a critical part of the disability determination," yet "the ALJ failed to explain how he reached" that conclusion. 2018 WL 2739961, at *1. The Court remanded because "the [vocational expert's ("VE")] testimony rendering the percentage of time off-task [was] potentially work-preclusive," and the ALJ "failed to fulfill the duty of explanation on this issue." *Id.* at *2.

Here, the ALJ failed to explain how the evidence translated into the specific 5% off-task limitation, rather than 10% or 15% he contemplated during the hearing. Tr. 69-71. The ALJ raised three separate hypotheticals all of which included the same "light exertional level[s]" and restrictions; the same age, education, and vocational profile as Plaintiff; but interchanged 5%, 10%, and 15% time off-task due to issues with pain. *Id.* The VE testified that at 5% and 10% time off-task, the hypothetical claimant could not perform their past work, however, jobs remained in the national economy that the hypothetical claimant could perform. *Id.* However, when the time off-task increased to 15%, the VE determined that this would be work preclusive. *Id.* at 71. The ALJ ultimately concluded that Plaintiff "would be off-task 5% of the workday[]" due to "issues with pain[.]" *Id.* at 31. The ALJ's only other mention of Plaintiff's off-task limitation is when the ALJ stated that they "also adopted an allowance for 5% off-task to further address [Plaintiff's] continued hip and knee pain." *Id.* at 35; *Abdul K.*, 2022 WL 2789363, at *2-3 (internal quotation marks omitted) (finding remand warranted when the ALJ's "only explanation provided for [10%] numerically specific limitation is that it is supported by [a] September 2017 EMG/NCS test, and a notation that it is due to [plaintiff's] ongoing back, neck, and left shoulder pain.").

The ALJ's explanation for how the 5% limitation is calculated is not only required under SSR 96-8p, but is significant because an increase in limitation percentage precluded all competitive employment according to the VE. Tr. 69-71; WL 374184 at *7 (S.S.A.); *see Brian L.*, 2020 WL 1814205, at *3 ("An explanation of how that percentage was calculated is significant, since a six percent increase could preclude competitive employment."); *Jeffrey B. v. Saul*, No. GLS-20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) (internal citation omitted) ("The lack of any explanation as to how the ALJ calculated this percentage is significant because 'a one percent increase could preclude competitive employment.'"). Similar to the ALJ in *Lee*, the ALJ here "failed to explain why he equated the facts to a [10%] reduction as opposed to the [20%] reduction he contemplated (or, for that matter, any other number)." *Lee v. Berryhill*, No. TMD-15-3307, 2017 WL 3007068, at *8 (D. Md. July 14, 2017) (alternations in original) (quoting *Lobbes v. Colvin*, No. WGH-13-0057, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014)). "The ALJ's failure to connect his factual findings to his chosen number is particularly disconcerting because . . . the figure he discarded would have meant disability according to the VE's testimony." *Id.* (internal citation omitted); *see Kane*, 2018 WL 2739961, at *2 ("[T]he assignment of a precise percentage of time off-task constitute[s] a critical part of the disability determination" and when "the ALJ fail[s] to explain how he reached the conclusion" remand is warranted).

Defendant argues that the ALJ's conclusion is supported by substantial evidence, but their argument is unpersuasive. ECF No. 20, at 12-13. A reviewing court should not be "left to guess" about how the ALJ arrived at their conclusions, while here, the Court can only guess as to why the ALJ settled on a 5% off-task limitation. *See Carter*, 2018 WL 4381275, at *12. Ultimately, the

Tanya E. v. Commissioner, Social Security Administration
Civil Case No. SAG-22-2084
March 18, 2024
Page | 6

ALJ failed to explain how the evidence translated into a determination that Plaintiff would be off task 5% of the time, rather than the potentially work preclusive 15%. *See Petry*, 2017 WL 680379, at *2. Having failed to provide an adequate explanation of this conclusion, remand is warranted. *See Lee*, No. TMD-15-3307, 2017 WL 3007068, at *8 (internal citation omitted) ("In short, the ALJ failed to explain how this evidence translated into a determination that [Plaintiff] would be off task 10% of the time"); *see also Beth Ann O. v. Kijakazi*, No. BAH-21-1877, 2022 WL 3360277, at *3 (D. Md. Aug. 15, 2022) ("Defendant ignore[ed] that the Fourth Circuit, and this Court specifically, have regularly held that an ALJ's failure to explain *how* they determined that a claimant would be off task for a specific percentage of the workday precludes meaningful judicial review. Such is the case here and remand is warranted."). Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge